**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AMERICA TAXPAYERS FIGHTING FRAUD LLC, f/k/a RELATOR LLC, a California limited liability company, )<br>)<br>)<br>)<br><br>     Plaintiffs, )<br>)<br><br>    v. )<br>)<br>)<br>CASEY PAULSON, an individual, ANDY MITCHELL, an individual, BLUEJACK DEVELOPMENT CO, LLC, a Delaware limited liability company, THE BLUEJACK COMPANY, LLC, a Delaware limited liability company, and DOES 1-10,<br><br>     Defendants. | Case No. 4:24-cv-04201 |

---

**<u>AMERICAN TAXPAYERS FIGHTING FRAUD LLC'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I.    SUMMARY OF THE ARGUMENT.................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS .........................................2

III.  STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT AND

      STANDARD OF REVIEW..........................................................................3

IV.   STATEMENT OF FACTS...........................................................................3

      A.    THE PAYCHECK PROTECTION PROGRAM .................................4

      B.    BLUEJACK DEVELOPMENT'S PPP LOANS.................................5

V.    ARGUMENT.............................................................................................6

      A. THE PUBLIC DISCLOSURE BAR DOES NOT APPLY .......................................6

            1.    DEFENDANTS HAVE NOT PROPERLY IDENTIFIED

                  ANY PURPORTED PUBLIC DISCLOSURES FOR THE

                  COURT TO CONSIDER .......................................................7

            2.    THE COMPLAINT IS NOT BASED UPON

                  "SUBSTANTIALLY THE SAME" ALLEGATIONS OR

                  TRANSACTIONS ALLEGED IN THE COMPLAINT ........................8

      B. THE COMPLAINT SATISFIES RULE 9(B) ...............................................13

      C. THE COMPLAINT ALLEGES SCIENTER ...............................................16

      D. ANY DISMISSAL SHOULD BE WITH LEAVE TO AMEND..............................18

VI.   CONCLUSION .......................................................................................18

## TABLE OF AUTHORITIES

**CASES**

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.,*
103 F.4th 383 (5th Cir. 2024) ................................................................................................. 18

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.,*
238 F.3d 363 (5th Cir. 2001) .................................................................................................. 18

*Cooper v. Blue Cross & Blue Shield of Florida, Inc.,*
19 F.3d 562 (11th Cir.1994) ................................................................................................... 12

*U.S. ex rel. Branch Consultants v. Allstate Ins. Co.,*
560 F.3d 371 (5th Cir. 2009) .................................................................................................. 11

*United States ex rel. Capshaw v. White,*
No. 3:12-CV-4457-N, 2018 WL 6068806 (N.D. Tex. Nov. 20, 2018) .................................. 17

*U. S. ex rel. Colquitt v. Abbott Labs.,*
858 F.3d 365 (5th Cir. 2017) .................................................................................................... 7

*United States ex rel. Fried v. W. Indep. Sch. Dist.,*
527 F.3d 439 (5th Cir. 2008) .................................................................................................. 11

*United States ex rel. Grubbs v. Kanneganti,*
565 F.3d 180 (5th Cir. 2009) .................................................................................................. 14

*United States ex rel. Longhi v. Lithium Power Techs., Inc.,*
575 F.3d 458 (5th Cir. 2009) ............................................................................................ 13, 14

*United States ex rel. Little v. Shell Expl., Prod. Co.,*
602 F. App'x 959 (5th Cir. 2015) ........................................................................................... 10

*United States ex rel. Jamison v. McKesson Corp.,*
649 F.3d 322 (5th Cir. 2011) ........................................................................................ 9, 10, 12

*United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.,*
133 F. 4th 395 (5th Cir. 2025) .......................................................................................... 17, 18

*United States ex rel. Relator LLC v. iLink Emps. Co.,*
No. 24-5636, 2025 WL 3066301 (9th Cir. Nov. 3, 2025) ...................................................... 15

*United States ex rel. Relator LLC v. Gusella et al.,*
No. 4:24-cv-04203 (S.D. Tex. May 2, 2025) ......................................................................... 14

ii

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.,*
 519 F. App'x 890, (5th Cir. 2013) ........................................................................................... 14

*United States ex rel. Porter v. Magnolia Health Plan, Inc.,*
 810 F. App'x 237 (5th Cir. 2020) ............................................................................................ 14

*United States ex rel. Schweizer v. Canon, Inc.,*
 9 F.4th 269 (5th Cir. 2021) .................................................................................................. 7, 11

*United States ex rel. Solomon v. Lockheed Martin Corp.,*
 878 F.3d 139 (5th Cir. 2017) ..................................................................................................... 3

*United States ex rel. Springfield Terminal Ry. Co. v. Quinn,*
 14 F.3d 645 (D.C. Cir. 1994) ..................................................................................................... 8

*United States ex rel. Sullivan v. Atrium Med. Corp.,*
 No. 13-cv-244, 2015 WL 13799759 (W.D. Tex. June 15, 2015) ..................................... 3, 5, 6

*United States ex rel. Relator LLC v. Tennyson,*
 No. 2:23-cv-05887-SRM-SSC (C.D. Cal. Sep. 29, 2025) .......................................................... 9

*United States ex rel. Willard v. Humana Health Plan of Texas Inc.,*
 336 F.3d 375 (5th Cir. 2003) ................................................................................................... 16

*United States v. Kasam,*
 No. 2:22-cv-05198, 2025 WL 3724905 (C.D. Cal. Dec. 11, 2025) ........................................ 15

*United States v. McGlauflin,*
 No. 1:24-CV-00155-RP, 2026 WL 1508877 (W.D. Tex. May 29, 2026) ............................. 7, 15

*United States v. Uhler,*
 No. 2:23-CV-00499-CAS-MBKX, 2025 WL 4350115
 (C.D. Cal. Oct. 6, 2025) ............................................................................................... 15, 16, 17

*United States v. Vista Hospice Care, Inc.,*
 No. 3:07-cv-604-M, 2012 WL 12886423 (N.D. Tex. July 23, 2012) ...................................... 17

*Santander v. Salazar,*
 133 F.4th 471 (5th Cir. 2025) ................................................................................................ 3, 4

*Tuchman v. DSC Communications Corp.,*
 14 F.3d 1061 (5th Cir. 1994) ................................................................................................... 16

**STATUTES**

15 U.S.C. § 645 ................................................................................................................................. 5

18 U.S.C. § 1001 ............................................................................................................................... 5

iii

18 U.S.C. § 1004 ...............................................................................................................5

18 U.S.C. § 3571 ...............................................................................................................5

31 U.S.C. § 3729 .......................................................................................................passim

31 U.S.C. § 3730 .......................................................................................................passim

**REGULATIONS**

85 Fed. Reg. 20811.........................................................................................................10

85 Fed. Reg. 20812.........................................................................................................11

**RULES**

Fed. R. Civ. P. 12(d)........................................................................................................4

**OTHER AUTHORITIES**

U.S. Small Business Administration, SBA Announces Opening of Paycheck
    Protection Program Direct Forgiveness Portal (July 28, 2021),
    https://www.sba.gov/article/2021/jul/28/sba-announces-opening-
    paycheck-protection-program-direct-forgiveness-portal (last visited June 16,
    2026)................................................................................................................................10

### I. SUMMARY OF THE ARGUMENT

Plaintiff-Relator American Taxpayers Fighting Fraud LLC f/k/a Relator LLC[1] ("Relator" or "ATFF"), respectfully submits this Memorandum of Points and Authorities in opposition to Bluejack Development Co, LLC ("Bluejack Development") and The Bluejack Company, LLC's ("Bluejack Company") (together, the "Defendants") Motion to Dismiss Plaintiff's Complaint or in the Alternative Motion for Summary Judgment (ECF No. 22) (the "Motion"). The Motion must be denied because the Complaint is not barred by the False Claims Act's ("FCA") public disclosure provision, satisfies the pleading requirements of the FCA, and adequately alleges scienter.

*First*, the public disclosure bar does not apply to this case because Defendants fail to point to a source that discloses Relator's allegations or the fraudulent nature of the transaction at issue in this case. *See United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 144 (5th Cir. 2017) ("The combination of X and Y must be revealed, from which the readers or listeners may infer Z. . . Z is an inference of fraud under the FCA, while X and Y are two required elements for the inference: a misrepresented state of facts and a true state of facts. The presence of one or the other in the public domain, but not both, cannot be expected to set government investigators on the trail of fraud.") (internal citations and quotations omitted). Defendants try to convince this Court that X alone equals Z. What Defendants do not point to—because they cannot point to it— is the presence of any qualified public disclosure of the fraudulent transaction. At most, they point to scattered facts that in hindsight allow an inference of fraud, but the disclosures were ambiguous and in any event such scattered disclosures are not what trigger the FCA's public disclosure bar. Put differently, Defendants cannot point to anything that would have put the Government on notice

---

[1] Plaintiff's name-change request was filed with this Court on February 6, 2026, and remains pending. ECF 17.

that this transaction may have been fraudulent, especially given the exigent nature of the program and the PPP's explicit reliance on borrower certifications concerning eligibility.

*Second*, Relator's allegations that Defendants caused an authorized representative to submit the fraudulent PPP loan application and forgiveness paperwork more than satisfies Federal Rule 9(b) and scienter for all Defendants. Simply stated:(1) the President and Managing Member of a private golf club (or their authorized representative) that screens its potential members and requires the payment of exorbitant membership fees obviously knew the nature of the club's business and screening; (2) the authorized representative required to sign and submit PPP application paperwork was required to certify understanding of the relevant eligibility rules and that the club qualified under those rules; and (3) SBA rules clearly prohibited clubs that limit their membership for reasons other than capacity from participating in the PPP loan program. The submission of the PPP loan and forgiveness paperwork falsely certifying that the club qualified for participation in the program constitutes a fraud through which the club received millions in ill-gotten funds from American taxpayers.

Defendants' name-calling – referring to Relator as a "serial relator" (Mot. at 1) – is irrelevant. The FCA expressly permits private relators to bring actions on behalf of the United States, and nothing in the statute bars a relator from filing more than one case or from pursuing similar fraud schemes against different defendants. The only relevant questions here are whether these Defendants submitted or caused the submission of false claims to the Government, whether the specific fraudulent transactions alleged in this Complaint were publicly disclosed within the meaning of the FCA's public disclosure bar, and whether this Complaint adequately alleges fraud. Because the Complaint plausibly alleges that these Defendants committed fraud, and because

2

Defendants have not shown that the allegations are barred by the public disclosure bar, the Motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Relator filed this *qui tam* action under the False Claims Act under seal on October 29, 2024. ECF No. 1. The United States declined to intervene on November 13, 2024. ECF No. 5. After Defendants failed to appear in the case, the Clerk entered default against Bluejack Development and Bluejack Company on December 18, 2025. ECF No. 14. The Court granted Bluejack Development and Bluejack Company's motion to set aside the entry of default on May 26, 2026. ECF No. 21. Bluejack Development and Bluejack Company now move to dismiss the Complaint under Rule 12(b)(6), or in the alternative for summary judgment. ECF No. 22.

## III.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW

1.    Whether the Complaint is barred by the FCA's public disclosure provision, 31 U.S.C. § 3730(e)(4).  The public disclosure bar is an affirmative defense. *See United States ex rel. Sullivan v. Atrium Med. Corp.*, No. 13-cv-244, 2015 WL 13799759, at *10 n.115 (W.D. Tex. June 15, 2015), *report and recommendation adopted*, 2015 WL 13799754 (W.D. Tex. July 30, 2015). A court should not dismiss a Complaint based on the public disclosure bar unless the allegations are based upon those already disclosed in the news media, federal audits, or reports, and the relator does not qualify as an original source. *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021).

2.    Whether the Complaint satisfies Rule 9(b)'s heightened pleading requirements. Fed. R. Civ. P. 9(b). In considering a motion to dismiss, a court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiff. *Santander v. Salazar*, 133 F.4th 471, 477 (5th Cir. 2025). A court must determine whether the

complaint contains "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (cleaned up). A plaintiff may plead "with particularity the circumstances constituting fraud" for an FCA claim "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 190 (5th Cir. 2009). This means a plaintiff must "plead the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017).

3.      Whether the Complaint adequately pleads scienter. As with issue No. 2 above, in considering a motion to dismiss, a court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiff. *Santander*, 133 F.4th at 477. As the Fifth Circuit has explained, "in order to adequately plead scienter, 'a plaintiff must set forth specific facts that support an inference of fraud.' Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384–85 (5th Cir. 2003) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (cleaned up).

4.      Whether the Court should convert Defendants' Motion into one for summary judgment. If the Court considers matters outside the pleadings and does not exclude them, Rule 12(d) requires that the Motion be treated as one for summary judgment and that Relator be given a reasonable opportunity to present all pertinent material. Fed. R. Civ. P. 12(d).

## IV.    STATEMENT OF FACTS

This is an FCA action to recover treble damages and civil penalties against Defendants, who defrauded the SBA in connection with Bluejack Development's application for and receipt of $2,276,585 from two COVID-19 PPP loans and the subsequent forgiveness of those loans.

4

**A.      The Paycheck Protection Program**

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. Compl. ¶ 23. The CARES Act was the Government's initial economic response to the COVID-19 pandemic, and it included the PPP, which authorized forgivable loans (known as PPP First Draw Loans) to qualifying small businesses to facilitate job retention and certain other permitted business expenses. *Id.* ¶¶ 23–26. These loans were to be underwritten by private banks but were funded and guaranteed by the Small Business Administration ("SBA"), which would then forgive (pay off) the loan balances if certain criteria were met.

To obtain a PPP First Draw Loan, a qualifying business had to submit a loan application signed by an authorized representative, typically to a private bank which would issue the loan with minimal underwriting, subject to an SBA guarantee, and ultimately funded by the SBA. To qualify for a PPP First Draw Loan, a business had to certify on its application, among other things, that it (i) was "eligible to receive a loan under the rules in effect at the time this application [was] submitted . . ." (ii) faced economic uncertainty due to the COVID-19 pandemic; and (iii) would use the PPP First Draw Loan funds to maintain its existing payroll and to cover certain qualified expenses. *See* Compl. ¶¶ 32–35. PPP applicants also acknowledged that false certifications on their applications would violate federal law and be punishable by imprisonment and civil fines, including violations of: (i) 18 U.S.C. §§ 1001, 1004, 3571; (ii) 15 U.S.C. § 645; and (iii) the FCA, 31 U.S.C. §§ 3729 *et seq*. *Id.* ¶ 37. PPP loan application and forgiveness paperwork was required to be certified and submitted by an "authorized representative" of the applying company. *See* SBA Form 2483, PPP Borrower Application Form (requiring completion and submission by the "authorized representative of the Applicant" and signature of the "Authorized Representative of Applicant"); SBA Form 3508S, PPP Loan Forgiveness Application (requiring signature of the "Authorized Representative of Borrower").

**B.**     **Bluejack Development's PPP Loans**

During round 1 of the PPP, Bluejack Development applied for a First Draw PPP loan for $1,126,765. Compl. ¶ 46. The Bluejack Company, LLC, Casey Paulson (Bluejack Development's President) and Andy Mitchell (Bluejack Development's Managing Member) submitted the PPP loan application, or caused that application to be submitted, despite knowing that Bluejack Development was ineligible to participate in PPP because it owned and operated Bluejack National, which is a private golf club that limited its membership for reasons other than capacity. *Id.* ¶¶ 6–8 14–18, 48. Defendants also knew that Bluejack Development did not meet the economic-necessity standard for obtaining the PPP First Draw loan. *Id.* ¶ 8.

Bluejack Development's PPP First Draw Loan was approved for the full amount by the Small Business Administration on April 27, 2020, and Bluejack Development received the funding shortly thereafter. *Id.* ¶ 46. The loan was facilitated by Texas Capital Bank, National Association. *Id.* Later, Defendants submitted the PPP First Draw Loan forgiveness application, and the PPP First Draw Loan was forgiven in its entirety on April 21, 2021. *Id.* That application was fraudulent because Bluejack Development was never eligible to receive the PPP First Draw Loan in the first place.

During round 2 of the PPP, Bluejack Development applied for a second PPP loan for $1,149,820, which was approved for the full amount by the SBA on February 16, 2021. *Id.* ¶ 47. The loan was facilitated by Texas Capital Bank, National Association. *Id.* Later, Defendants again knowingly submitted—or caused to be submitted—a PPP Second Draw Loan forgiveness application, and Bluejack Development's PPP Second Draw Loan was forgiven in its entirety on December 22, 2021. *Id.*

## V.   ARGUMENT

The FCA has been the Government's primary fraud fighting tool since the Civil War era and provides the Government with its main means of recovery for frauds against the public fisc. The FCA provides that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B), is liable to the United States for civil penalties "plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1).

### A.  The Public Disclosure Bar Does Not Apply

Defendants invoke the FCA's "public disclosure" provision, 31 U.S.C. § 3730(e)(4). Mot. at 3–10. However, Defendants fail to carry their burden to show this affirmative defense applies here. *See Sullivan*, 2015 WL 13799759, at *11 n. 115 (recognizing that after 2010 amendments to the FCA, the public disclosure bar is an affirmative defense).

Under § 3730(e)(4)(A), the FCA bars a relator's action only if "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in one of three specified public channels—such as a federal hearing, audit, or the "news media"—and the relator is not an "original source." 31 U.S.C. § 3730(e)(4)(A). The Fifth Circuit uses a three-part test to determine if the public disclosure bar applies: "(1) whether there has been a 'public disclosure' of allegations or transactions, (2) whether the *qui tam* action is 'based upon' such publicly disclosed allegations, and (3) if so, whether the relator is an 'original source' of the information." *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 373 (5th Cir. 2017). "[C]ombining the first two steps can be useful, because it allows the scope of the relator's action in step two to define the

7

'allegations or transactions' that must be publicly disclosed in step one." *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 275 (5th Cir. 2021).

### 1. Defendants Have not Properly Identified any Purported Public Disclosures for the Court to Consider

As a threshold matter, Defendants have not properly put any purported public disclosures for consideration before the Court. "In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021). Defendants attached purported public disclosures as exhibits to their Motion but did not request that the Court take judicial notice of those documents. The Court should therefore decline to consider any of the exhibits to Defendants' Motion to Dismiss.[2]

### 2. The Complaint is not Based Upon "Substantially the Same" Allegations or Transactions Alleged in the Complaint

Even if the Court considers Defendants' exhibits, Defendants still fail to demonstrate that Complaint is "based upon" publicly disclosed allegations or transaction. "A plaintiff's FCA complaint is based upon public disclosures if one could have produced the substance of the

---

[2] Nor should the Court convert Defendants' Motion into one for summary judgment at this early stage. *See* Mot. at 3 n.1. Plaintiff has not had a reasonable opportunity to obtain evidence necessary to oppose summary judgment. *See United States v. McGlauflin*, No. 1:24-CV-00155-RP, 2026 WL 1508877, at *3 (W.D. Tex. May 29, 2026), *report and recommendation adopted*, 2026 WL 1806765 (W.D. Tex. June 23, 2026) (declining to treat motion to dismiss based on public disclosure bar as motion for summary judgment because "discovery remains open until January 25, 2027"). If the Court were to treat the Motion as one for summary judgment, Plaintiff requests that it be "given a reasonable opportunity to present all the material that is pertinent to the motion" pursuant to Rule 12(d).

8

complaint merely by synthesizing the public disclosures' ***description of the joint venture scheme***. . . . The public disclosures must therefore provide ***specific details about the fraudulent scheme*** and the types of actors involved in it sufficient to set the government on the trail of the fraud." *Solomon*, 878 F.3d at 144 (emphasis added). The Fifth Circuit uses the so-called *Springfield* test to determine "whether public disclosures contain sufficient indicia of an FCA violation to bar a subsequently filed FCA complaint." *Id.* at 144. "Under this approach, 'the combination of X and Y must be revealed, from which the readers or listeners may infer Z[.]' Z is an inference of fraud under the FCA, while X and Y are two required elements for the inference: 'a misrepresented state of facts *and* a true state of facts.'" *Id.* (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994).

Defendants do not engage with the *Springfield* inquiry, let alone satisfy it. Defendants argue that the following facts alleged in the FAC were publicly disclosed across several sources: (1) the details regarding Bluejack Development's PPP loans, such as the amount of the loans, amount forgiven, and that Bluejack Development identified on its PPP loan applications that it was part of the "golf courses and country clubs industry (Mot. at 7), and (2) that Bluejack National is a "private club" (*id.* at 6). But Defendants fail to identify a single, qualified public disclosure that discloses both the "X" and the "Y" information necessary to infer that Defendants committed fraud without additional information from other sources. Nor have Defendants identified any disclosure – or combination of disclosures – that reveal the actual fraud at issue here. At most, Defendants identify scattered facts that – along with further investigation and knowledge of relevant SBA guidelines concerning private clubs – with the benefit of 20/20 hindsight might reveal that Defendants might have been ineligible for their PPP loans.

9

For example, Defendants state the PandemicOversight.gov source reveals that Bluejack Development applied for two PPP loans, one in the amount of $1,126,765 and one in the amount of $1,149,820. (Defs.' Mot. at 5–6.) But this basic transactional information does not include both a "misrepresented state of facts ***and*** a true state of facts." *Solomon*, 878 F.3d at 144. The misrepresented state of facts here is that Bluejack was eligible to participate in the PPP and to have received $2,276,585. Nothing Defendants point to on PandemicOversight.gov constitutes the Y: that Bluejack National was a private country club that limited its membership for reasons other than capacity and was therefore ineligible to receive any funds from the PPP. *See also United States ex rel. Relator LLC v. Tennyson*, 2:23-cv-05887-SRM-SSC, Dkt. No. 75, at 12 (C.D. Cal. Sep. 29, 2025) ("[Pandemic Oversight's] vague description of [defendant's] industry is 'so innocuous' that there can be no disclosure of a fraudulent transaction in the first instance.") (citations omitted).

The same analysis applies to the other sources Defendants attached as exhibits to their Motion—there was nothing in any of the disclosures which would have "set the government on the trail of the fraud." *Solomon*, 878 F.3d at 144 (quoting *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329 (5th Cir. 2011)). For example, Defendants reliance on the *ProPublica*'s PPP loan database's description that Bluejack Development is part of the "Golf Courses and Country Clubs" industry (Mot at. 7) is misplaced. At most, this disclosure was ambiguous because golf courses that were *not* private (that is, those golf courses that did not limit membership for reasons other than capacity) *were* eligible to receive PPP funds. Thus, the disclosure that Bluejack Development fell within the broad "Golf Courses and Country Clubs" industry did not disclose the critical fact necessary to infer fraud: that Bluejack National was a private club that limited membership for reasons other than capacity and therefore was ineligible

10

to receive PPP funds. Indeed, when combined with the explicit representation that the borrower both understood the eligibility rules and that the club qualified for the PPP – each of which were required to participate in the PPP at all – this disclosure could not have revealed the fraud at all. *See, e.g.*, *U.S. ex rel. Little v. Shell Expl., Prod. Co.*, 602 F. App'x 959, 966–67 (5th Cir. 2015) (declining to apply the bar to disclosure that revealed some relevant facts but "was neither an allegation nor an actual transaction of fraud"); *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329 (5th Cir. 2011) (declining to apply public disclosure bar where disclosure listed defendant companies but did "not indicate that any of the listed companies engaged in fraud," but applying the bar as to "public disclosures [that] provided specific details about the fraudulent scheme and the types of actors involved in it").

The context of the PPP makes clear that the government would not have been on notice to investigate based on these disclosures. The PPP was an emergency program, administered at unprecedented scale through private lenders, with the SBA expressly permitting lenders to rely on borrowers' certifications concerning eligibility. *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,812 (Apr. 15, 2020) (interim final rule); *see also* U.S. Small Business Administration, SBA Announces Opening of Paycheck Protection Program Direct Forgiveness Portal (July 28, 2021), https://www.sba.gov/article/2021/jul/28/sba-announces-opening-paycheck-protection-program-direct-forgiveness-portal (last visited June 16, 2026) (noting that the SBA ultimately issued and approved over 11.7 million loans to over 8.5 million small businesses under the PPP). Defendants' certification of eligibility made Defendants' disclosures to the government not breadcrumbs leading to an investigation but instead conclusive statements that such an investigation was not required. Defendants ignore this context and their explicit certifications of understanding and eligibility. *Cf. U.S. ex rel. Branch Consultants v.*

11

*Allstate Ins. Co.*, 560 F.3d 371, 380 (5th Cir. 2009) (in context of which relator was first to file, discussing that the relator's complaint helped to identify 4 specific insurers of 95 potential insurer-defendants and therefore "likely revealed instances of fraud that would have otherwise eluded the government").

Defendants' reliance on the Fifth Circuit's "partly based" language in *Schweizer* (*see* Mot. at 4-5) misstates the relevant case law. The *Schweizer* court was referring to an earlier case (*Fried*) where the court applied the public disclosure bar to a case involving a prior qualifying disclosure of a fraudulent scheme, not scattered facts from which fraud might have been inferred. *U.S. ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th Cir. 2008). Specifically, the actual fraudulent scheme at issue had previously been disclosed to the General Accounting Office, discussed in Congressional hearings, and written about in trade publications. *See id.* The Fifth Circuit held that the fact that the relator was able to bring "some nuggets of new, i.e., non-public, information" was not relevant because the allegations were ultimately at least "partly based" on the previously disclosed alleged fraud. *Id.* Notably, the relator in that action did not bring any information that identified the specific defendant because the defendant school district's involvement in the scheme was part of the earlier public reporting. In other words, *Fried* is a case where a fully fraudulent scheme had already been revealed (unlike here), and the relator only brought additional details about that fraudulent scheme.

But the Fifth Circuit did not hold that any complaint that is merely "partly based" on prior disclosures that trigger the public disclosure bar[3] is necessarily barred by the affirmative defense.

---

[3] Defendants repeatedly refer to "publicly available information" throughout their Motion, but this vague term is not synonymous with information that can trigger the FCA's public disclosure bar. *See* 31 U.S.C. § 3730 (e)(4)(A)(i)-(iii) (specifying the channels through which a qualifying public disclosure may occur).

12

In fact, a later Fifth Circuit panel recognized the absurdity of such a reading. *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 329–30 (5th Cir. 2011). The *Jamison* court considered a situation (like here) with widespread reporting and knowledge of fraud within a specific industry, and a relator's lawsuit alleging additional details that a specific defendant engaged in such fraud. The court (citing and quoting the Eleventh Circuit approvingly) recognized that an overly broad application of the public disclosure bar:

> "would preclude any qui tam suit once widespread—but not universal—fraud in an industry was revealed. The government often knows on a general level that fraud is taking place and that it, and the taxpayers, are losing money. But it has difficulty identifying all of the individual actors engaged in the fraudulent activity. This casting of a net to catch all wrongdoers is precisely where the government needs the help of its 'private attorneys general.'"

*Id.* at 329-30 (quoting *Cooper v. Blue Cross & Blue Shield of Florida, Inc.*, 19 F.3d 562, 566 (11th Cir.1994)). Here, while PPP fraud was endemic, "private attorneys general" such as Relator are vital to helping the government identify the specific wrongdoers, here by determining that Defendants were not the sort of golf course that might have qualified for PPP funds, as it certified on its PPP paperwork to the government. Moreover, this case demonstrates that Defendants' reading of the "partly based" language is overly broad, misstates Fifth Circuit precedent, and would lead to absurd results. The FCA means what it says, and the public disclosure bar only blocks those actions where "***substantially the same allegations or transactions*** as alleged in the action or claim were publicly disclosed" through an enumerated channel. 31 U.S.C. § 3730(e)(4)(A) (emphasis added).

Defendants' public disclosure argument also fails for an additional reason: the alleged public disclosures do not necessarily link the PPP borrower (Bluejack Development) to the ineligible private club (Bluejack National). The Complaint alleges that Bluejack Development was the owner and operator of Bluejack National, the exclusive members-only country club at issue.

13

Compl. ¶¶ 6, 17–18. At most, Defendants point to sources showing that Bluejack Development received PPP loans (Exs. B and E), and separate sources describing Bluejack National as a private club or luxury golf community (Exs. C, D, and H). Those are not the same thing. A disclosure about "Bluejack National" does not necessarily disclose that Bluejack Development—the legal entity that applied for and received PPP funds—was itself operating an ineligible private club, much less that it certified eligibility, economic necessity, authorized use of proceeds, and entitlement to forgiveness despite that ineligibility. Defendants therefore still identify only disconnected pieces of information, not a public disclosure of the allegedly fraudulent transaction. In sum, Defendants' attempt to invoke the public disclosure bar fails at every turn, and the Court should reject it.

Defendants rely heavily on a dismissal of a Relator complaint against a different country club (Houston Oaks). *See* Mot. at 1, 5, 10, 11, 13. Relator submits that *Gusella* was wrongly decided. Defendants fail to note that the court dismissed that complaint due to the specific information contained on the defendant's webpage. *See Relator LLC v. Gusella et al.*, Case No. 4:24-cv-04203 (S.D. Tex. May 2, 2025), ECF No. 33 at 26 (dismissing based on inferences made from defendants' website). In any event, it is not surprising that much of the complaints overlap, given the space devoted to identical issues—from federal statutes and regulations and the certifications required for every PPP participant for applying and for forgiveness—and the relative straightforward nature of these simple (but harmful) PPP frauds.

**B.     The Complaint Satisfies Rule 9(b)**

The Complaint adequately states an FCA claim as to all Defendants. The FCA imposes liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States. 31 U.S.C. § 3729(a)(1)(A). The elements of an FCA claim are: (1) a false statement or fraudulent course of conduct; (2) made or carried out

14

with the requisite scienter; (3) that was material to the government's decision to pay or forgive a claim; and (4) caused the government to pay out funds. *See United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 467 (5th Cir. 2009). Defendants only address the first two elements in their Motion.

To survive a challenge under Federal Rule 9(b), "a party alleging fraud or mistake 'must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 240 (5th Cir. 2020) (quoting Fed. R. Civ. P. 9(b)). In the context of the FCA, the Fifth Circuit has "explained that Rule 9(b) is 'context specific and flexible,' and noted that a plaintiff may sufficiently state a claim with particularity 'without including all the details of any single court-articulated standard—it depends on the elements of the claim in hand.'" *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892–93 (5th Cir. 2013) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189–90 (5th Cir. 2009)). A plaintiff may plead "with particularity the circumstances constituting fraud" for an FCA claim "by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. This means a plaintiff must "plead the 'who, what, when, where, and how' of the alleged fraud." *Colquitt*, 858 F.3d at 371.

The Complaint easily meets this standard. It identifies:

**Who:** Bluejack Development, acting through The Bluejack Company, LLC, Casey Pulson, and Andy Mitchell[4] (Compl. ¶ 6);

---

[4] Discovery will reveal who the "authorized representative" was on the PPP paperwork. Defendants do not claim that the PPP paperwork was submitted without authorization.

15

**What:** Bluejack Development's certifications of PPP eligibility, economic necessity, compliance with PPP rules, and entitlement to forgiveness (*id.* ¶¶ 7–10);

**When:** April 2020, when Bluejack Development applied for its first-draw PPP loan (*id.* ¶ 46), February 2021, when Bluejack Development applied for its second draw PPP loan (*id.* ¶ 47), April 2021, when Bluejack Development applied for forgiveness of its first-draw PPP loan (*id.* ¶ 46), and December 2021, when Bluejack Development applied for forgiveness of its second-draw PPP loan (*id.* ¶ 47);

**Where:** through PPP loan and forgiveness applications submitted to Texas Capital Bank, National Association and transmitted to the SBA for federal guarantee and forgiveness (*id.* ¶¶ 46–47); and

**How:** by falsely certifying eligibility, necessity, and compliance on SBA forms that lenders and the SBA were required to—and did—rely upon in approving, guaranteeing, and forgiving PPP loans (*id.* ¶¶ 31–39, 48–56).

Defendants' reliance on *Ramirez v. Allstate Vehicle & Prop. Ins. Co.*, 490 F. Supp. 3d 1092, 1116 (S.D. Tex. 2020), for a supposed prohibition on "group pleading" is misplaced. *Ramirez* was not an FCA case, involved a single defendant, and never applied the group-pleading principle it recited—itself borrowed from a securities-fraud case, *Southland Sec. Corp. v. INSpire Ins. Sols.*, 365 F.3d 353, 365 (5th Cir. 2004)—to dismiss any claim. To the contrary, the *Ramirez* court *denied* the Rule 9(b) motion before it, finding the plaintiffs' allegations of specific dates, actors, and statements sufficient. *Id.* at 1117–18. The Complaint here does the same: it identifies which Defendant occupied which role at Bluejack Development—Paulson as President, Mitchell as Managing Member—and alleges that each, in that capacity, understood the PPP eligibility rules and caused the fraudulent certifications to be made. Compl. ¶¶ 6, 14–15, 48. That is far removed

16

from the sprawling, undifferentiated pleadings against numerous unrelated defendants that concerned the courts in the group-pleading cases on which Defendants rely. In any event, PPP documents were required to be certified and submitted by an "authorized representative," rendering this supposed dispute academic.

Courts have held that where, as here, a relator identifies the submission of specific false claims and the mechanisms by which they were approved, Rule 9(b) is satisfied. *See, e.g.*, *McGlauflin*, 2026 WL 1508877, at *5 (holding FCA allegations satisfied Rule 9(b) when Complaint alleged Defendants knowingly falsified number of employees to receive PPP loan); *U.S. ex rel. Relator LLC v. iLink Emps. Co.*, No. 24-5636, 2025 WL 3066301, at *2 (9th Cir. Nov. 3, 2025) (reversing district court's dismissal and holding that relator plausibly alleged with sufficient particularity "that Defendants falsely certified that information in their applications was 'true and accurate in all material aspects,' they 'underst[ood]' the statements in the applications, and were eligible to apply for and receive PPP loans"); *United States v. Kasam*, No. 2:22-cv-05198, 2025 WL 3724905, at *6 (C.D. Cal. Dec. 11, 2025) (holding FCA allegations satisfied Rule 9(b) when complaint "allege[d] the dates that the [PPP] loans were approved," and "detail[ed] which statements were allegedly false and why"); *United States v. Uhler*, No. 2:23-CV-00499-CAS-MBKX, 2025 WL 4350115, at *8 (C.D. Cal. Oct. 6, 2025) (holding FCA complaint regarding golf club pleaded a fraud cause of action).

The Moving Defendants' arguments to the contrary are baseless. The details of the relatively simple fraud are clearly spelled out in the Complaint: the Defendants lied about Bluejack Development's PPP eligibility and economic necessity in Bluejack Development's PPP applications to obtain PPP loans (and forgiveness), and without these false statements Bluejack Development would have been ineligible to receive a single dollar.

17

### C.    The Complaint Alleges Scienter

Rule 9(b) states that Defendants' state of mind "may be alleged generally," without specificity. Scienter under the FCA includes three states of mind, any of which is sufficient to find liability for "knowing" acts, including: (1) actual knowledge, (2) deliberate ignorance; or (3) reckless disregard. 31 U.S.C. § 3729(b)(1)(A). Moreover, the FCA "require[s] no proof of specific intent to defraud." *Id.* § 3729(b)(1)(B). As the Fifth Circuit has explained, "in order to adequately plead scienter, 'a plaintiff must set forth specific facts that support an inference of fraud.' Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)) (cleaned up).

The Complaint alleges that Defendants knowingly submitted false certifications in connection with Bluejack Development PPP loan applications, including certifications regarding Bluejack Development's PPP eligibility and economic necessity. Compl. ¶¶ 48, 50. It then pleads specific facts that make it plausible that the Defendants knew those certifications were false when they made them. For example, the Complaint pleads that the individuals who controlled Defendants were aware of and understood the applicable requirements to receive PPP loans and aware of the fact that Bluejack National was a private club that restricted its membership for reasons other than capacity (*id.* ¶ 48) yet certified that Bluejack Development was eligible for PPP loans (*id.* ¶¶ 6, 32).

Making such certifications without proper investigation at the very least demonstrates reckless disregard for the truth. *See, e.g.*, *United States v. Vista Hospice Care, Inc.*, No. 3:07-cv-604-M, 2012 WL 12886423, at *4–5 (N.D. Tex. July 23, 2012) (holding that allegations of certification for hospice care "without a physical exam or review of a patient's medical files" was

18

sufficient to allege scienter in FCA case); *Grubbs*, 565 F.3d at 190 (holding that FCA complaints satisfy Rule 9(b) by "alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that [false] claims were actually submitted"); *United States ex rel. Capshaw v. White*, No. 3:12-CV-4457-N, 2018 WL 6068806, at *3 (N.D. Tex. Nov. 20, 2018) (relying on a plausible inference to conclude that the defendant "acted in either deliberate ignorance or reckless disregard that his certifications of lawfulness were false"); *Uhler*, 2025 WL 4350115, at *9 (finding allegations in complaint satisfied "general pleading standard for scienter" when complaint alleged defendants "knew and understood the applicable requirements to receive PPP loans," knew that country club "was ineligible for a loan because it is a restrictive members-only private club that limited membership for reasons other than capacity," knew that country club "lacked the economic necessity required for PPP loans," and that "defendants nonetheless certified eligibility and economic necessity in order to obtain PPP loans"); *United States ex rel. Relator LLC v. Tennyson*, No. 2:23-cv-05887-SRM-SSC, Dkt. No. 75, at 16 (C.D. Cal. Sep. 29, 2025) (finding it "reasonable to infer" that a company's CEO and CFO "would have known" the company was ineligible for a PPP loan, and that the CEO "would have authorized" the certifications the CFO made on the company's PPP applications, sufficient under Rule 9(b)).

In sum, the Complaint adequately alleges that Defendants knowingly made false statements to obtain $2,276,585 in PPP loans. Such allegations are sufficient to survive a motion to dismiss. *See, e.g., United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F. 4th 395, 407–08 (5th Cir. 2025) (holding "the district court did not err in declining to extend the False Claims Act's scienter requirement to the materiality element in this case").

**D.     Any Dismissal Should be with Leave to Amend**

For the reasons above, the Court should deny Defendants' Motion in its entirety. However, should the Court find any pleading defect, it should grant Relator leave to amend its Complaint.

19

Rule 15 provides that a court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), and the Fifth Circuit has emphasized that "[l]eave to amend should be liberally granted." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024). Further, "prejudice is the touchstone of the inquiry under rule 15(a)," *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (cleaned up), and Defendants make no such showing in their motion.

## VI.   CONCLUSION

For the reasons discussed above, Relator respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint. To the extent this Court disagrees, Relator respectfully requests an opportunity to amend to cure any deficiency.

DATED: July 2, 2026

*/s/ Kristen L. Nelson*
Kristen L. Nelson
**HECHT PARTNERS LLP**
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Tel.: (646) 502-9515
knelson@hechtpartners.com

20

**CERTIFICATE OF SERVICE**

On July 2, 2026, a true and correct copy of the forgoing was served on all counsel of record via the Case Management Electronic Case Filing (CM/ECF) System for the U.S. District Court for the Southern District of Texas.

*/s/ Kristen L. Nelson*
Kristen L. Nelson

21